IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JONNA R. LAND,
    Plaintiff,

v.                                Case No:   5:09cv369/SPM/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Land's applications for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Ms. Land filed applications for benefits claiming an onset of disability as of October 24, 2006. The applications were denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on April 15, 2009 at which Ms. Land was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 56-63) and Ms. Land requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 1-3). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Land had not engaged in substantial gainful activity since October 4, 2006, her alleged onset date; that she had severe impairments of fibromyalgia and depression; that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform a significant range of work at the light level of exertion; that she was unable to perform her past relevant work; that she was 43 years old, with a high school education and proficiency in English; that considering her age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d

1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

**To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).**

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir.

1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Between August 2004 and July 2006, Ms. Land was under the routine family practice care at the Oaks Medical Center in Panama City, Florida. In the summer of 2005 she was injured in a fall and was referred to Merle Stringer, M.D., a neurosurgeon. Ms. Land gave Dr. Stringer a history of having fallen out of a hammock two weeks earlier which resulted in severe pain in her mid and lower thoracic area. She also said she had been in a motor vehicle accident two years earlier which had caused neck and left arm pain as well as low back pain. Dr. Stringer ordered thoracic spine x-rays which were unremarkable. Dr. Stringer noted no complaints of anxiety, depression or mood swings but noted positive indications for musculoskeletal and neurological problems. On physical examination, there was tenderness to palpation in the mid and lower cervical spine and left trapezius. Neck movement was limited to 60% of normal. There was marked muscle spasm in the mid and lower lumbar area as well as mild muscle spasm in the sacroiliac joints. Motor, strength, deep tendon reflex and sensory examination were normal. Dr. Stringer's impression was neck and left arm pain with clinical evidence of nerve root compression. He noted that an MRI of the cervical spine from 2003 showed disc herniation of the cervical spine with nerve root compression on the left. He also found that Ms. Land suffered from cervical and lumbar spine pain and mid lower thoracic pain. He recommended an MRI and prescribed medication (tr. 460-462).

A June 21, 2005 MRI showed a herniation at C4-5 with a mild annular bulge at C5-6 (tr. 224). Dr. Stringer discussed the matter with Ms. Land on June 27. She did not want any injections but would try physical therapy and medications only. She

returned on July 8, 2005, improved with physical therapy. Dr. Stringer found no evidence of cervical compression.

On August 2, 2006, Ms. Land was referred to Mark Williams, M.D., an orthopedic surgeon, apparently at the direction of her employer's workers compensation carrier. She was having trouble with her right elbow and reported an unrelated, long standing problem with her left arm. She reported constant pain, stiffness and weakness in her left elbow that was not getting better. The pain was described as a seven on the one to ten scale. There was no numbness or tingling, and x-rays of the right elbow demonstrated no abnormalities. Physical examination was unremarkable except for claims of pain in the right elbow and the left arm, which was immobilized by a sling. There was no atrophy, scarring or deformity. There was full range of motion in the elbow, and no pain with motion was noted. There was diffused mild tenderness in the right elbow but no point tenderness. Grip strength was poor although the effort was questionable. Neurovascular examination was grossly intact. Dr. Williams suggested therapy, anti-inflammatory medication and follow up in one month. He felt that Ms. Land should be on light duty with no lifting greater than five pounds and no repetitive use of the right arm (tr. 263-265).

Ms. Land went to physical therapy three times during the months of September and October, 2006, apparently with some improvement (tr. 267-278). On September 25, 2006, she went to the emergency room at Bay Medical Center complaining of pain in her arm with muscle spasms. She was given medication and discharged (tr. 236).

She returned to Dr. Williams on October 5, 2006, reporting that her right arm was worse. On physical examination of the right arm there was no evidence of atrophy, scarring or deformity. There was mild tenderness in the forearm soft tissue. There was full range of motion in the elbow with no pain on motion. The elbow and wrist were non-tender without swelling or other findings. Grip strength was good and neurovascular examination was intact. Dr. Williams stated that he saw no

significant medical findings that would suggest any persistant industrial injury three months after her reported date of accident, that she was at maximum medical improvement on October 6, 2006 and that she could return to full duty (tr. 259-260).

In late December 2006, plaintiff was seen by Firas Saleh, M.D., a neurologist. Ms. Land complained of generalized myofascial pain. Dr. Saleh administered six trigger point injections (tr. 284). Ms. Land returned on March 7, 2007 still complaining of tightness, aching and pain in her neck and shoulders, worse on the left. She denied significant back pain. She also complained of anxiety because she had lost her job and was under a great deal of stress. Other than tenderness and tightness in the neck and shoulder muscles, her physical examination was entirely normal. Dr. Saleh referred to the May 25, 2006 MRI which noted a disc protrusion at C4-5 with narrowing of the spinal canal. He restarted Ms. Land on Flexoril and told her to use Lortab sparingly. Ms. Land did not want to have any further treatment done because she had no insurance at that time (tr. 282-283). On April 6, 2007, Ms. Land returned to Dr. Saleh. Her neck pain had improved significantly over the past few weeks although she still had episodes of severe pain at times. She was taking Lortab and Flexeril which seemed to help. She denied significant pain in the arms or any numbness, tingling or weakness. Her anxiety had improved significantly. Physical examination was normal other than findings of tenderness and tightness of the neck muscles. Dr. Saleh noted that her pain symptoms had improved and that Ms. Land should continue on Flexeril and Lortab but noted that she needed to be careful in the use of Lortab and to use it sparingly (tr. 280-281). The medical record is silent for the next four months.

Ms. Land began treatment under the Department of Veterans Affairs (VA) on August 22, 2007. She was seen by a general practitioner, Dr. Hardin, and was treated conservatively. On October 26, 2007, Dr. Hardin performed a full examination and, relative to this appeal, found "no areas of point tenderness that would be consistent with fibromyalgia." (Tr. 352) Two months later, on December 27, 2007, Ms. Land

complained of severe pain which was sensitive to touch. He prescriptions were refilled. She was seen that same day by a psychiatrist, Paul Wurst, M.D., who felt that Ms. Land had adjustment disorder, secondary to her physical problems, with depressed mood (tr. 342-349).

Ms. Land was referred for a neurology consult on February 11, 2008. The neurologist, James Torrisi, M.D., reviewed a recent MRI of the cervical spine which showed a small disc bulge at C4-5 but no significant canal stenosis or foraminal stenosis. Ms. Land was neurologically intact. Dr. Torrisi thought it unlikely that she had any underlying neurologic disorder and that her problem was purely a musculoskeletal one (tr. 411-413).

On March 19, 2008, Ms. Land returned to the VA. Dr. Torrisi performed nerve conduction and electromyogram studies which were within normal limits (tr. 394-397). That same day, Ms. Land was seen by a rheumatologist, Robert Howard, M.D., who found that greater than 50% of the fibromyalgia tender points were positive and that the tender points were present both above and below the waist on both sides of the body. His impression was fibromyalgia and drug seeking behavior (tr. 395-397).

Ms. Land returned to Dr. Wurst on May 2, 2008. Dr. Wurst noted that her mental status examination was essentially normal and his diagnostic impression was adjustment disorder with depressed mood (tr. 388-391).

Ms. Land returned to Dr. Hardin on May 20, 2008 saying that she hurt all over but that Lortab helped. Dr. Hardin again told her that opiods were not the solution to her problem (tr. 379-387).

The medical record is silent for the next year, until Ms. Land returned to the VA on April 22, 2009. She was seen by Dr. Hardin, who found spasm in the lumbar paraspinal region, tender to palpation, with reduced flexion, extension and lateral bending. His assessment was low back pain with spasms and fibromyalgia. He prescribed Flexeril (tr. 467-470). There is no record of any further treatment.

## DISCUSSION

Ms. Land argues that the ALJ erred in failing to apply the appropriate pain standard to her fibromyalgia and in giving too little weight to her depression, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Land was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Fibromyalgia and pain.</u>

Ms. Land first contends that her fibromyalgia, which the ALJ found to be severe but not disabling, was in fact disabling and that the ALJ did not adequately discount her testimony on the degree of pain she suffered. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed. Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*,

395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra*, at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the

---

[2]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 5:09cv369/SPM/MD*

existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

The ALJ found that Ms. Land's fibromyalgia was severe, but not so severe as to be disabling from all work. A diagnosis of fibromyalgia is based largely on the patient's subjective complaints, and positive laboratory findings are simply unavailable. The disease has been recognized by The American College of Rheumatology as both real and difficult to confirm:

> Fibromyalgia is especially confusing and often misunderstood because almost all its symptoms are also common in other conditions. . . . Unfortunately, because certain symptoms lack physical and laboratory findings (signs), but depend mostly on a person's report of complaints and feelings (symptoms), these syndromes are often viewed as not being real or important.

Arthritis Foundation & American College of Rheumatology, *Arthritis Information: Fibromyalgia* (1992). The American College of Rheumatology has developed diagnostic criteria for fibromyalgia. A person can be affirmatively diagnosed with the condition if he or she has widespread pain in combination with tenderness in at least 11 of 18 specific tender point sites. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers About Fibromyalgia* (1999), available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm. The Seventh Circuit has held that requiring positive laboratory findings in cases of this nature is error. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)[3]). In *Stewart*, the Court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark

---

[3] Unpublished decisions of this court are not binding precedent. See 11th Cir. R. 36–2.

*Case No: 5:09cv369/SPM/MD*

is a lack of objective evidence. The ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed. *Stewart,* 245 F.3d at 793, 2000 U.S.App. LEXIS 33214, at *9, n. 4. More recently, the Eleventh Circuit addressed fibromyalgia in *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), where it reiterated the impropriety of focusing on the absence of objective findings corroborating claims of the impairment. Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings. *See, e.g.*, *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817-18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.) Indeed, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment. Social Security Ruling 99-2p, 1999 WL 271569 (1999).

Here Ms. Land argues that the ALJ relied on the absence of positive findings in discounting her subjective complaints of pain. That is only partly true. The ALJ found that a diagnosis of fibromyalgia was not supported by laboratory testing, but he also found that the diagnosis was disputed in the records of the VA, which was correct. The VA notes indicated that on October 26, 2007, Dr. Hardin found "no areas of point tenderness that would be consistent with fibromyalgia." (Tr. 352). Later, the rheumatologist, Dr. Howard, found that greater than 50% of fibromyalgia

tender points were positive, and further noted that his impression (not his diagnosis) was fibromyalgia (tr. 396-97).[4]  Regardless, the ALJ found that Ms. Land had fibromyalgia and that it was severe.  What the ALJ did not do was credit her subjective complaints of disabling pain.

Ms. Land's subjective complaints of pain were discussed in detail.  First, no physician stated that Ms. Land was restricted to the point that she could do no work.  Early on Dr. Williams found that Ms. Land could return to full duty, but at the hearing Ms. Land explained this away by saying "[h]e lied." (Tr. 19).  Also, Ms. Land testified repeatedly that her muscles were swollen (tr. 27, 31) but swollen muscles were never noted by a physician.  The ALJ noted that repeated MRI's showed only a small bulge in her neck.  She also noted that there were numerous references in the record to Ms. Land exhibiting drug seeking behavior, and that she was told that Lortab would not help her pain.  Ms. Land tried to explain this away during the hearing, but the ALJ was not required to accept her explanations as true.

The ALJ also noted that Ms. Land could drive, cook, shop, buy groceries and do yard work, all of which were inconsistent with disabling pain.  It was well within the ALJ's realm of judging to find that while Ms. Land should be given the benefit of doubt with a finding that her fibromyalgia was severe, it was not so severe as to be disabling from any work.  Ms. Land has not shown error on this issue, and is not entitled to reversal.

    2.    <u>Depression.</u>

Ms. Land also contends that the ALJ erred in not giving appropriate weight to her depression.  The ALJ found that Ms. Land's depression was severe and that she could not perform production jobs, thereby giving appropriate consideration to her mental problem.  A finding of disabled is directed only if there is a finding of marked in at least two areas, or marked in one area with repeated episodes of

---

[4] He did not state that he found 11 of 18 positive points, only that he found greater than 50%, which could have meant he found 10.  That may explain why he noted an "impression" rather than a diagnosis.

decompensation. 20 C. F. R. Part 404, Subpart P, Appendix 1, listing 12.04 and 12.06. The ALJ appropriately found that Ms. Martin had mild limitations in activities of daily living and social functioning, no episodes of decompensation, and moderate limitations in concentration, persistence and pace. There was substantial record evidence to support these findings and Ms. Land is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of January, 2011.


/s/ *Miles Davis*
      MILES DAVIS
      UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**